UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-CR-74 |
| | ) | |
| CHARLES PHELPS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the United States' Motion for Review of Release Order [Doc. 27], requesting that the order be overturned, and that Defendant be detained pending trial. The Order was issued by Magistrate Judge Alistair E. Newbern in the Middle District of Tennessee on September 21, 2020 in *United States v. Phelps*, No. 3:20-mj-4198 (M.D. Tenn. Sept. 21, 2020).[1] This Motion was referred to the undersigned for report and recommendation by Senior District Judge J. Ronnie Greer pursuant to 28 U.S.C. § 636(b). The Court held a hearing on the Motion for Review via videoconference on October 15, 2020 after being advised by Defendant's counsel that Defendant had obtained the necessary transcript from the hearing held before Judge Newbern and was ready to proceed. Appearing before the Court were Assistant United States Attorney Meghan Gomez on behalf of the Government, Defendant's counsel, Attorney Timothy Hudson, and Defendant.

For the reasons discussed herein, the Court **RECOMMENDS** that the United States' Motion [Doc. 27] be **GRANTED** and that Defendant be detained pending trial in this matter.

---

[1] A copy of this Order was attached to the United States' Motion as an Exhibit [Doc. 27-2] and the separate Order setting Conditions of Release [Doc. 45-9] referenced therein was provided to the Court prior to the hearing on the United States' Motion.

I. **BACKGROUND**

Count One of the Indictment [Doc. 3] charges Defendant with conspiracy to knowingly and intentionally distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, and Count Two charges Defendant with conspiracy to knowingly and intentionally conduct and attempt to conduct financial transactions with intent to promote the distribution of methamphetamine, a Schedule II controlled substance.

Defendant was arrested on these charges in Nashville, Tennessee on September 17, 2020 on the outstanding arrest warrant resulting from the Indictment. Defendant appeared before Judge Newbern in the Middle District of Tennessee for an Initial Appearance on the same date and a detention hearing was scheduled for September 21, 2020 by video. Defendant appeared before Judge Newbern for the detention hearing as scheduled, along with Sumter L. Camp, the Assistant Federal Public Defender appointed to represent him. *United States v. Phelps*, No. 3:20-mj-4198 (M.D. Tenn. Sept. 21, 2020); *see* [Doc. 45-5,8].

The United States sought to detain Defendant pending trial, citing the presumption in favor of detention and Defendant's confirmed membership in the Aryan Brotherhood. Transcript of Detention Hearing, *United States v. Phelps*, No. 3:20-mj-4198 (M.D. Tenn. Sept. 21, 2020), [Doc. 20, p. 4]. The Government proffered that Defendant was recruited by a drug-trafficking organization run by a prison gang to traffic methamphetamine in 2016 and is now a high-ranking member of the organization who has acted as security during large methamphetamine transactions. *Id.* at p. 5. Additionally, the Government claimed Defendant has been identified by multiple informants as distributing methamphetamine and marijuana on behalf of the organization. The Government further contends that Defendant collected money from the sale of drugs and that there are financial records verifying that Defendant deposited the money collected. *Id.* Finally, the United States described the arrest of Defendant in Arkansas on February 16, 2020, during which Defendant and another individual were stopped by law enforcement and Defendant consented to a

search of the vehicle. *Id.* at p. 6. The search yielded $119,000.00 in U.S. currency, which was discovered in the spare trial of the vehicle Defendant was driving. *Id.* The Government concluded its proffer by stating that though he initially denied any knowledge of the money found in the spare tire, after his arrest Defendant admitted his involvement in the drug trafficking organization and stated he had been travelling to Phoenix, Arizona with the money to purchase methamphetamine. *Id.*

The United States ultimately argued that there is no condition or combination of conditions that would prevent Defendant from posing an unreasonable danger to the community or being a flight risk. *Id.* at p. 25. First, the Government pointed to the fact that, if convicted, Defendant faces a mandatory minimum sentence of ten-years imprisonment, but a maximum sentence of life imprisonment. Additionally, the Government argued that Defendant is a member of a "very dangerous prison gang" and has a history of violent behavior. *Id.* at p. 25-26. The United States also argued that Defendant has no ties to the Eastern District of Tennessee, where the indictment originates. *Id.* at p. 27. The Government concluded by submitting that Defendant had presented insufficient proof to overcome the presumption in favor of detention; noting that the penalty Defendant faces incentivizes flight; and emphasizing that Defendant poses too grave a danger to the community if released. *Id.* at p. 27-28.

On the other hand, Defendant contended that it was appropriate to release him pending trial and presented witnesses to testify on his behalf in support of that contention. First. Defendant's brother, Austin Phelps ("Mr. Phelps"), testified that since Defendant's release from jail in 2013 Defendant has been a "hard worker, dedicated father and husband" and has been steadily employed, though he has changed jobs. *Id.* at p. 9. Mr. Phelps also testified that both he and Defendant have lived in the Nashville area all their lives. *Id.* Mr. Phelps testified he believed Defendant would show up for court if released and he would not be a danger to the community.

*Id.* On cross examination, Mr. Phelps did admit knowing Defendant was a member of the Aryan Brotherhood and had learned this prior to his release from custody in 2013. *Id.* at p. 11.

Next, Defendant's employer, Troy Anderson ("Mr. Anderson") testified. *Id.* at p. 12. Mr. Anderson owns Top Down Roofing in the Old Hickory/Nashville area and currently employs Defendant. *Id.* at p. 12-13. Mr. Anderson had known Defendant for approximately 25 years, but Defendant had only been working for him for about six months. *Id.* Mr. Anderson testified Defendant is doing well at work and described Defendant's job as going out to inspect homes of the company's various clients. While there, he inspects the roof and/or related interior issues and fixes the problems he detects. He also has "one-on-one communication" with the homeowners and insurance companies. *Id.* at p. 13-14. Mr. Anderson reported receiving no complaints from customers about Defendant and stated some customers had complimented Defendant's work. *Id.* at 14. Mr. Anderson also testified that he believed Defendant would report to court if released and would not be a danger to the community. *Id.* at p. 15. When questioned by the Government as to why Defendant would have told Pretrial Services he had only been working for Mr. Anderson for two months instead of six months as Mr. Anderson stated during direct examination, Mr. Anderson explained that for the first few months Defendant was "just giving him referrals" but he counted that as working for him because he paid Defendant a referral fee. *Id.*

Finally, Jeanna Phelps ("Ms. Phelps"), Defendant's wife, testified on Defendant's behalf. Ms. Phelps stated she and Defendant have been married since 2016 and have a child together. *Id.* at p. 17-18. She described Defendant as a great husband and loving father who works hard to take care of his family. *Id.* at p. 18. She stated they were always able to pay their bills but sometimes struggled to do so. *Id.* Ms. Phelps testified that Defendant previously worked for the Firefighters Association and Blake Crosslin ("Mr. Crosslin") was his supervisor there. *Id.* at 19. She stated that

Mr. Crosslin had provided a letter in support of Defendant for the Court.[1] *Id.* Ms. Phelps also testified that she had discussed the responsibilities of being Defendant's third-party custodian with defense counsel and understood that as Defendant's third-party custodian she would be responsible for ensuring that he reported to his court dates and for reporting any violations by Defendant of the conditions of his release. *Id.* at p. 20. Ms. Phelps also acknowledged that reporting Defendant for committing violations could result in him going back to jail but was still willing to serve as his third-party custodian. *Id.* Ms. Phelps also told the Court that Defendant's mother, brother-in-law, and sister-in-law were present for the hearing in support of Defendant. *Id.* at p. 21.

Ms. Phelps denied any knowledge of Defendant's involvement in drug deals prior to his arrest on the indictment at issue. *Id.* at p. 22-23. She stated that when Mr. Phelps was arrested in Arkansas in February, she believed he was on his way to buy a car hauler rather than to purchase methamphetamine. *Id.* at p. 23. Ms. Phelps admitted knowing Defendant had been involved with the Aryan Brotherhood but was unsure of when she first learned it but thought it might have been around the time they got married in 2016. *Id.* at p. 22-23. She further testified that there are two children who live in her home. Ms. Phelps stated that there were no drugs or weapons in the home. *Id.* at p. 23-24.

Defendant argued that the evidence presented by these witnesses along with the letter in support from Mr. Crosslin was sufficient to overcome the presumption in favor of detention and demonstrate that Defendant would not be a flight risk or danger to the community if released. *Id.* at p. 28. Defendant asserted that although he does not have strong ties to the Eastern District of Tennessee, where the indictment originates, he does have strong ties to the Nashville community, stating that Defendant has lived in the area all his life and has family there, a number of whom attended the hearing to show support. Defendant's counsel argued that Defendant's circumstances

---

[1] The letter from Mr. Crosslin was entered into the record of the hearing as Exhibit 1.

fit within the meaning of having "community ties" as defined in § 3142, citing a Ninth Circuit opinion in support.[2] *Id.* Regarding his criminal history, Defendant argued that he was released from prison in 2013 upon the expiration of his sentence and was not subject to any further supervision or parole at that point and had been out of custody for seven years with no issues. *Id.* at p. 29. Defendant asserted that his ties to the community and seven years with no arrests rebutted the presumption that he was a flight risk, contending that the Government had not carried its burden with regard to that risk. *Id.*

Defendant further argued that the proof he presented rebutted the presumption that he is a danger to the community. Defendant pointed to the testimony of witnesses who know him and the letter from Mr. Crosslin as verification that he would not be a danger to the community if released. He asserted that community safety would be further assured by Ms. Phelps acting as his third-party custodian. *Id.* at p. 30. He also noted that the Government had produced no evidence that Defendant would be a danger to the community aside from the proffer of what its proof would be and suggested that the proffer was inconsistent with Ms. Phelps' testimony that there were no large amounts of money coming into the home and they sometimes had difficulty paying their bills. *Id.* Defendant concluded by arguing that the proof he presented was sufficient to rebut the presumption in favor of detention, contending that the factors set forth in § 3142(g) demonstrate that there are conditions which could be imposed that would both reasonably assure Defendant's appearance and protect the community. Defendant relied in part on the recommendations of Pretrial Services in the pretrial report to support this contention. *Id.* at p. 31. Judge Newbern asked Pretrial Services if anything presented during the hearing had changed the recommendation in the Pretrial Services report, and the Pretrial Services Officer attending the hearing advised the recommendation had not changed. *Id.* at p. 34.

---

[2] The transcript reflects defense counsel referenced *United States v. Townsend*, a Ninth Circuit opinion, to support this argument but a full case citation was not provided.

After hearing testimony and oral argument, Judge Newbern found that Defendant had rebutted the applicable presumption and ordered Defendant released pending trial. First, Judge Newbern noted the two considerations within the issue of detention: 1) whether Defendant would pose a risk of flight, i.e. not appear for future court proceedings if released; and 2) if Defendant would pose a danger to any other person or the community if released pending trial. *Id.* at p. 35. Judge Newbern explained the Government has the burden of proof on both issues and must show risk of flight by preponderance of the evidence and risk of danger to another person or the community by clear and convincing evidence. *Id.* She went on to explain that while in most cases the assumption is that defendants should not be kept in custody pending trial, there are some cases, such as the one at hand, where the presumption is in favor of detention. *Id.* at 36. Judge Newbern stated the presumption in favor of detention can be overcome by the introduction of evidence that Defendant would not be a danger to the community if released. *Id.* Judge Newbern found that the evidence of Defendant's ties to the community, family support, and the commitment of his wife to serve as third-party custodian was "enough to meet the low bar of overcoming the presumption." *Id.* at p. 37.

Judge Newbern next explained that the presumption now becomes a factor to be considered along with other factors set out by law for consideration in deciding whether Defendant should be released pending trial. Judge Newbern first addressed the nature and circumstances of the offenses with which Defendant is charged. She noted the nature of the drug trafficking offense set forth in Count One of the Indictment is one which involves serious danger. Judge Newbern noted that drug trafficking entails introducing drugs into the community, putting others at risk, and frequently involves acts of violence. *Id.* at p. 37. She went on to summarize the proffer of the United States as to the offenses charged. *Id.* at p. 38-39. Next, Judge Newbern addressed the weight of the evidence as to the danger Defendant would present if released. *Id.* at p. 39. In addressing this factor, Judge Newbern noted the United States had only presented evidence through a proffer. She found

that "because of the nature of the proffered statements and lack of corroboration" the weight of the evidence of the danger Defendant would present if released to be "relatively minimal." *Id.*

Judge Newbern found Defendant's evidence to be most relevant when considering the personal history and characteristics factor, noting that witnesses had testified regarding Defendant's reputation as a hard worker and that Ms. Phelps was willing to serve as third-party custodian. *Id.* at p. 40. Judge Newbern summarized Defendant's criminal history and determined Defendant's criminal history to be "relatively minimal" and without much evidence of a history of violence other than his 2005 conviction. *Id.* at p. 40-42. In addressing the nature of the danger Defendant might present if released and whether that danger can reasonably be controlled by any conditions of pretrial release, Judge Newbern again noted Defendant is alleged to have been transporting large quantities of drugs across the United States and to have been in a leadership role in the Aryan Brotherhood, both of which are very dangerous. *Id.* at p. 41-42. Finally, Judge Newbern stated she would also take into consideration the recommendation of Pretrial Services, which in this case was for Defendant to be released with conditions of supervision. *Id.* at p. 42-43.

The final question Judge Newbern addressed was whether there were conditions of supervision that she could impose to control any danger, ultimately concluding that such conditions did exist. *Id.* at p. 43. To mitigate the risk posed by the drug trafficking allegations made against Defendant, Judge Newbern imposed a location monitoring condition and restricted Defendant to the Middle and Eastern Districts of Tennessee, which she later modified to a curfew requirement with electronic monitoring.[3] She also required Ms. Phelps to serve as Defendant's third-party custodian, imposed a requirement that Defendant work regularly and ordered Defendant to participate in any drug treatment program recommended by Pretrial Services. *Id.*

---

[3] After Judge Newbern had reviewed all the conditions of release with Defendant she noted she had forgotten to set the requirements for the location monitoring so that conditions would be imposed as a curfew requirement, the time of which would be at the discretion of Pretrial Services based upon Defendant's work and family obligations. *United States v. Phelps*, No. 2:20-mj-4198 (M.D. Tenn. Sept. 21, 2020), ECF Doc. 20, p. 50.

Judge Newbern addressed the responsibilities of a third-party custodian with Ms. Phelps and reviewed other standard conditions of release with Defendant. *Id.* at p. 44-]. Upon the motion of the Government, Judge Newbern agreed to stay her order of release for 24 hours to allow the United States to determine whether it would appeal the order of release. *Id.* at p. 52.

The Government then filed the motion at issue here [Doc. 27] on September 22, 2020, requesting that the Court stay the release order from the Middle District of Tennessee until a hearing could be held in the Eastern District of Tennessee, and further requesting that Judge Newbern's release order be overturned. Senior District Judge J. Ronnie Greer subsequently stayed Judge Newbern's release order and ordered that Defendant remain detained pending resolution of the Government's motion. [ Doc. 34].

On October 5, 2020, Defendant appeared before the undersigned for arraignment in the Eastern District of Tennessee and for a hearing on the United States' motion; however, Defendant requested additional time to prepare for the hearing and expressed a desire for the Court to consider the witness testimony offered during the detention hearing in the Middle District of Tennessee. The Court granted Defendant's request for a continuance and entered an Order advising that the matter would be reset upon notice that Defendant was ready to proceed. [Doc. 48]. Defendant filed a Notice to Proceed [Doc. 54] on October 6, 2020. A video hearing was held on the Government's motion for review of the release order on October 15, 2020. Appearing before the Court were Defendant and his appointed counsel, Timothy Hudson, *Esq.*, and Assistant United States Attorney Meghan Gomez.

## II.     SUMMARY OF INFORMATION OFFERED AT THE OCTOBER 15 HEARING

AUSA Gomez first offered additional information to supplement the United States' proffer made during the detention hearing in the Middle District of Tennessee. AUSA Gomez stated that although Ms. Phelps testified that there was no drug use in the home she shares with Defendant, agents smelled marijuana in the home when Defendant was arrested, and Defendant admitted to

using marijuana on the day of his arrest. Additionally, AUSA Gomez reported that Defendant told agents his wife did know about his involvement in drug trafficking. The Government further proffered that Defendant travelled to the western United States to assist in the packaging of drugs and made trips within Tennessee to deliver drugs to other dealers and was paid $1,000 per trip. The United States also proffered that Defendant had personally delivered drugs to detention facilities and had been involved in supplying drugs to other gangs. Regarding Defendant's involvement in the Aryan Brotherhood, AUSA Gomez stated that Defendant told agents he had difficulty finding steady work after his release from prison and got back into drug trafficking for the Aryan Brotherhood to make money, admitting that he was an active member of the gang. The Government stated that not only is Defendant an active member of the Aryan Brotherhood but that he is a high-ranking member taking orders directly from the leader of the gang and the Government has identified Defendant as being third in command. The Government also emphasized that Defendant has acted as security for the Aryan Brotherhood during drug transactions along with at least one other member by being present and ensuring that nothing went wrong. The United States also presented a list of 33 infractions Defendant committed from 2006 to 2013 while he was in the custody of the Tennessee Department of Correction ("TDOC"). These infractions include possession of a deadly weapon, possession of drugs and drug paraphernalia, assault, and threatening a TDOC employee.

      The United States argued that Defendant is a risk to the community as evidenced by his involvement in the Aryan Brotherhood, a violent prison gang, in combination with the nature of the charged offense and his history of violent acts. The Government further argued that in addition to being a member of a prison gang, Defendant's history of infractions while in prison and his prior felony convictions, one of which is for the armed robbery of a criminal informant, demonstrate the danger he would present to the community if released. The United States also contended that Defendant is a flight risk due to the minimum mandatory sentence he is facing and his links to members within the Aryan Brotherhood and drug trafficking organizations around the country.

Pretrial Services in this District also considered the report of its Middle District colleagues and made its own recommendation. Based upon Defendant's criminal history, lack of employment history, prior failures to appear, and conduct while in TDOC custody, Pretrial Services in this District recommended detention. It should also be noted that neither the Court nor Pretrial Services in the Middle District were made aware of Defendant's history of infractions while in TDOC custody.

Defense counsel noted that Judge Newbern previously found that requiring Defendant to wear an ankle monitor would satisfactorily address any concerns regarding flight or danger to the community. He further stated that Defendant was not found in possession of any firearms and there are not allegations that he used firearms in relation to the drug trafficking offenses charged. Defense counsel concluded by asserting that Defendant is an appropriate candidate for release as demonstrated by Judge Newbern's determination.

The official transcript of the detention hearing before Judge Newbern, along with the declaration signed by Defendant's wife, the letter from Defendant's former employer, the Pretrial Services Report from the Middle District of Tennessee, the list of Defendant's infractions while in TDOC custody, and Judge Newbern's Order staying Defendant's release were all made exhibits to the hearing and have been considered by the Court in making its recommendation. Defendant offered no additional testimony or exhibits to the Court for consideration.

### III. STANDARD OF REVIEW

Under the Bail Reform Act, the Court must determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g). In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the Defendant; (3) the Defendant's history

and characteristics; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." 18 U.S.C § 3142(g)(1)-(4).

In the instant case, the Government moved for detention and Judge Newbern then held a detention hearing to determine whether Defendant should be detained. Because of the specific crime charged, a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(A). Here, the Indictment provides the necessary probable cause to believe that Defendant has committed an offense under the Controlled Substances Act for which he faces a maximum sentence of ten years or more. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption). This presumption places the burden of production with the Defendant, while the Government retains the burden of persuasion. *Stone*, 608 F.3d at 945. To satisfy his burden of production, the defendant must present at least some evidence that he is not a danger or a flight risk. *Id.* Even when the defendant meets the burden of production, the Court must continue to weigh the presumption that detention is appropriate along with the other factors, because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.*

"If a person is ordered released by a magistrate judge . . ., the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order[.]" 18 U.S.C. § 3145(a)(1). The district judge reviews the decision to release or detain the defendant *de novo*.[4] *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128 (S.D. Ohio 2000)

---

[4] Although a magistrate judge cannot review another magistrate judge's decision to release a defendant, a district judge may refer the Government's motion to revoke a release order to a magistrate judge for report and recommendation. *United States v. Shaw*, No. 5:17-CR-26-KKC- REW, 2017 WL 5711438, *2–3 (E.D. Ky Nov. 17, 2017) (Wier, MJ), *report and recommendation adopted by,* 2017 WL 5710443 (E.D. Ky Nov. 27, 2017) (Caldwell, CJ). The district judge will ultimately conduct a *de novo* review of the detention issue by reviewing the report and recommendation, which considers all the evidence offered to that point. *Shaw*, 2017 WL 5711438. at *3.

(holding that although the Sixth Circuit has yet to address this issue, the majority of circuits hold that de novo review is appropriate); *see also United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, *4 (E.D. Tenn. Dec. 4, 2017). "[M]eaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Yamini*, 91 F. Supp. 2d at 1129; *Tolbert*, 2017 WL 6003075 at *4 (observing that the district judge has discretion to consider additional evidence to that presented at the original detention hearing). A motion to revoke a release order must be "determined promptly." 18 U.S.C. § 3145(a).

## IV. ANALYSIS

As discussed above, the Court finds that the rebuttable presumption under 18 U.S.C. § 3142(e)(3)(A) that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of the community" applies in this case, because the Defendant is charged with a violation of the Controlled Substances Act for which the maximum potential penalty is ten years or more. At the same time, the Court finds that Defendant has initially rebutted this presumption by providing evidence of his strong ties to the Middle Tennessee community in which he has resided throughout his life and also through his current employment, especially in light of the company owner's willingness to testify on Defendant's behalf. That finding does not end the inquiry, and the Court must now consider the presumption merely as one of the several factors used in analyzing whether release is appropriate. *See Stone*, 608 F.3d at 945.

First, the Court finds that the nature and circumstances of the offense charged weigh in favor of detention. 18 U.S.C. § 3142(g)(1). The Court notes that Defendant is charged with conspiracy to knowingly and intentionally distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, and with conspiracy to knowingly and intentionally conduct and attempt to conduct financial transactions with the intent

to promote the distribution of methamphetamine, a Schedule II controlled substance. In its motion [Doc. 27], the United States detailed how Defendant had been identified through several investigative techniques, including co-conspirators and confidential informants, as a member of a dangerous prison gang responsible for trafficking and distributing hundreds of pounds of methamphetamine [Doc. 27, p.1]. Additionally, the Government's motion states that Defendant admitted to agents after his arrest that he was a prison gang member, was involved in the drug trafficking organization as alleged and collected money from drug sales and the distribution of methamphetamine and marijuana. He also admitted that the $119,000.00 found during his February 2020 arrest in Arkansas was to be used to buy methamphetamine for the organization. *Id.* at p. 3. Defendant did not dispute making these statements during the October 15, 2020 hearing. Both Defendant's ongoing ties to a prison gang and the very significant quantities of methamphetamine that he is alleged to have trafficked present serious risks to the safety of the community.

Second, the weight of the evidence of Defendant's dangerousness also supports a finding that Defendant should be detained. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d at 948. The Court finds that the allegations submitted by the Government support a finding that Defendant poses a significant danger to the community which no combination of conditions sufficiently addresses. The charged offense involves dangerous narcotics, specifically methamphetamine, and the Court notes that Defendant is alleged to have successfully delivered methamphetamine to TDOC prisons and other criminal gangs, raising serious concerns about Defendant's ability to distribute drugs undetected in the community and to other dangerous individuals. Defendant's alleged role as providing "security" during large drug transactions is of further concern to the Court. The Sixth Circuit "routinely affirms, on dangerousness grounds, the

pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Id.* at 947 n.6 (observing that "drug trafficking is a serious offense that, in itself, poses a danger to the community"). Defendant qualifies as far more than a run-of-the-mill drug dealer.

The third factor examines Defendant's history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," along with evidence of whether the Defendant was on conditions of release at the time of the current offense. 18 U.S.C. § 3242(g)(3)(A)-(B). Defendant argues that his lack of criminal charges since his 2006 conviction weighs heavily in Defendant's favor; however, Defendant was serving a nine-year prison sentence during that time and was only released from custody in 2013. The Indictment at issue here also alleges that the conspiracy dates back to January of 2016, a period of well over four years. The Court further observes that Defendant has prior convictions for Aggravated Robbery with a Weapon or Object and Possession with Intent to Distribute .5 Grams or More of Cocaine, with the aggravated robbery conviction providing significant support for the Government's contention that Defendant poses a danger to the community. The Court also finds the number and serious nature of Defendant's infractions while in TDOC custody indicate that Defendant has a propensity for violent behavior. [Doc. 27-1].

The Court does agree with Defendant that his lifelong strong family ties to the Nashville area support his request for release. Defendant's wife testified on Defendant's behalf and was willing to serve as his third-party custodian. Defendant's brother, Austin Phelps, also testified on Defendant's behalf and several other family members were present to show their support. At the same time, the Court cannot overlook the fact that Ms. Phelps denied that there were any drugs present in her home and also denied knowing why Defendant was headed out west on the day of

his arrest; yet, Defendant told agents that there were drugs in the home and his wife was aware of his drug trafficking. The Court also has concerns about the candor of the testimony provided by Defendant's employer, given that he initially testified that Defendant had been working for him for six months when he actually had only been working for him for two months. Defendant referring some work to his now-employer would not constitute him being an employee. This concern is supported by Defendant's statements to agents that he became involved in drug trafficking again due to his inability to find consistent employment since his release from prison. This statement also undercuts other testimony offered on Defendant's behalf about his consistent work ethic and providing funds such that he and his wife could pay their bills. The Court also cannot ignore the fact that despite Defendant's strong family ties to the Nashville area, he is alleged to have frequently traveled to California and other areas in the western United States as well as the Eastern District of Tennessee in order to engage in drug trafficking.

Finally, under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Due to the serious risk of danger associated with trafficking large quantities of methamphetamine, including Defendant's willingness to deliver those drugs to detention facilities, when combined with Defendant's involvement in a violent prison gang, his own violent behavior while incarcerated, his serious criminal history which includes violent offenses, and his continued travel from Nashville to the western United States and the Eastern District of Tennessee, the Court finds that the proposed conditions of home incarceration with location monitoring, as well as Ms. Phelps serving as a third-party custodian, are insufficient to reasonably assure the safety of the community. It appears that Ms. Phelps either knowingly acquiesced to Defendant trafficking large quantities of drugs or was unable to identify the signs that Defendant was engaged in this activity. Neither scenario provides the Court with sufficient comfort that she could or would report any violation of conditions by Defendant.

Case 2:20-cr-00074-JRG-CRW    Document 91    Filed 11/16/20    Page 16 of 17
PageID #: 246

Furthermore, the Court also finds persuasive the Government's argument that Defendant poses a flight risk due to the length of potential sentence and his connections to other individuals involved in drug trafficking in other parts of the country through his ties to the Aryan Brotherhood. While Defendant may have strong ties to the Nashville community, he certainly has contacts in other parts of the country which he could use to facilitate flight in an attempt to avoid a lengthy prison sentence.

Consequently, the Court finds that the evidence and information provided at the hearing established: (1) by clear and convincing evidence that the Defendant poses a serious risk of danger to the community or another person; (2) by preponderance of the evidence that Defendant poses a risk of flight; and (3) that no condition or combination of conditions will reasonably assure the appearance of Defendant and safety of individuals of the community if the Defendant were released on bond.

## V. CONCLUSION

Accordingly, the Court **RECOMMENDS** that United States' Motion for Review of Release Order [Doc. 27] be **GRANTED**, and that Defendant be detained pending trial.[5]

Respectfully submitted,

s/ Cynthia Richardson Wyrick
United States Magistrate

---

[5] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).